EDWIN A. LOMBARD, Judge.
1 ,This case arises out of a September 2000 boating accident involving a boat owned and operated by James Gonzales and insured by Progressive Insurance Company (“Progressive”) in September 2000. After review of the record in light of the arguments of the parties and applicable law, we affirm the judgment of the trial court and deny the Exceptions of Prescription and Res Judicata filed by James Gonzales.

Relevant Facts and Procedural History

On July 18, 2001, the plaintiffs/appellants (Huey Gonzales, Ralph G. Gonzales, Kathy Gonzales, and Thomas Gonzales), filed this lawsuit alleging that they were injured on a September 25, 2000, family outing when James Gonzales negligently drove his sixteen foot boat into the pilings of a stationary platform located in the Mississippi River Gulf Outlet in St. Bernard Parish. James Gonzales and his insurer, Progressive, were named as defendants in the lawsuit. On November 19, 2003, Progressive filed an amended and supplemental answer, instituting a recon-ventional demand against the plaintiffs and a cross-claim against their insured, James Gonzales, alleging fraud and a conspiracy between the plaintiffs and James Gonzales to stage the purported accident. In response, the | ..plaintiffs dismissed James Gonzales as a defendant. Progressive expressly reserved all rights against him and he remains in the lawsuit as a defendant and cross-appellee.
On April 4, 2005, following an eight day trial on the merits, the trial court dismissed the plaintiffs’ claims against Progressive, granted Progressive’s reconven-tional demand against the plaintiffs, and dismissed Progressive’s cross-claim against James Gonzales. In his reasons for judgment, the trial judge found that James Gonzales was negligent in striking a piling or part of a piling in the Mississippi River Gulf Outlet on September 25, 2000, but that the claim he conspired with the *560 plaintiffs to defraud the insurance company was unsubstantiated. The trial judge held that the plaintiffs failed to prove by a preponderance of the evidence all the elements of their claims against Progressive. He specifically found that the plaintiffs were not credible witnesses because they repeatedly contradicted each other as well as their own prior deposition testimony with regard to the details and events surrounding the accident, their testimony was inconsistent with the physical evidence and related expert testimony introduced at trial and, when viewed in light of the medical testimony and records, the trial judge found the plaintiffs’ testimony unconvincing on the issue of causation. With regard to the reconventional demand, the trial judge found that Progressive proved by a preponderance of the evidence that the plaintiffs schemed to defraud Progressive in order to receive damages not owed to them and, accordingly, ordered Huey, Ralph, and Kathy Gonzales to repay sums of $2480.00, $2183.00, and 1,992.00, respectively, to Progressive for medical payments coverage made to them.
On appeal, the plaintiffs argue that the trial court was manifestly erroneous in granting Progressive’s prescribed recon-ventional demand against the plaintiffs; |s(2) in issuing inconsistent and contradictory judgments; (3) in finding that the plaintiffs schemed to defraud Progressive; and (4) in denying the plaintiffs’ claims for special and general damages related[1] to injuries suffered in the accident. In response, Progressive asserts that the trial court judgment pertaining to the plaintiffs’ claims should be affirmed but argues that the trial court erred in failing to find that James Gonzales, the defendant-in-recon-vention, conspired with the plaintiffs to defraud the insurance company. James Gonzales has filed two exceptions related to this matter: (1) an Exception of Prescription, asserting that Progressive’s claims in the reconventional demand were prescribed; and (2) an Exception of Res Judicata, arguing that because Progressive failed to timely file a separate appeal to the judgment as it pertained to his dismissal from the case and only appealed that part of the judgment in his answer to the plaintiffs’ appeal, the doctrine of res judicata is applicable and proscribes consideration of Progressive’s appeal.

Discussion

In reviewing the factual findings of a trial court, this court is limited to a determination of manifest error. Stobart v. State through Dept. of Transp, and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). On review, an appellate court may not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently and, accordingly, where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. Moreover, “[wjhen the findings are based on determinations regarding the credibility of witnesses, the manifest error-elearly wrong standard ^demands greater deference to the trier of facts’ findings [ ] for only the factfinder can be aware of the variations in demeanor and tone of choice that bear so heavily on the listener’s understanding and belief in what is said.... ” Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
In this case, the plaintiffs contest the trial judge’s dismissal of their claims against Progressive. In order to prevail on a negligence tort claim, the plaintiffs must prove three elements by a preponderance of the evidence: fault, causation, and damages. See Austin v. Abney Mills, *561 Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1150. After review of the evidence adduced at trial under the applicable manifest error standard of review, we can find no error in the trial judge’s factual findings, credibility determinations, or judgment. The plaintiffs contend that they were injured when James Gonzales lost control of his boat and hit the platform piling while traveling at approximately 30 miles per hour, but there are no independent witnesses to the accident and the plaintiffs offer conflicting testimony as to the details of the accident, such as where the boat hit the piling, how far it travelled, and the results of the impact upon the passengers. Moreover, although expert testimony suggests that such an impact at 30 miles per hour would have, in all likelihood, resulted in one or more of the passengers being ejected from the boat[1] and very visible injuries, none of the plaintiffs were ejected from the boat and the only visible injury noted at the emergency room that day was a contusion on the chest of one of the plaintiffs. No non-family witnesses to the accident or its immediate aftermath appeared at trial which is striking because the plaintiffs claim that they were rescued by two people in a boat and taken back to the boat launch at |sBayou Bienvenue. Notably, each plaintiff gives a conflicting description of the rescuers (including gender and age) and the rescue boat and, apparently, no one learned the rescuers name. Upon returning to the boat launch, the plaintiffs[2] drove in two separate vehicles to Lakeland Hospital where a Progressive adjuster met them and gave both Kathy and Ralph Gonzales checks in the amount of $1000.00. While the plaintiffs submitted extensive medical records and testimony, in light of the substantial amount of evidence pertaining to prior accidents and injuries, as well as indications that the plaintiffs misrepresented or gave conflicting medical histories to their treating physicians, we do not find that the trial judge was manifestly erroneous in finding that the plaintiffs failed to establish that the accident in September 2000 was the cause of their medical complaints. Thus, there is no error in the trial judge’s finding that the plaintiffs failed to prove the requisite elements of their claim.
Next, the plaintiffs argue that the judgment dismissing their claims against Progressive must be overturned because it conflicts with the judgment dismissing Progressive’s claim against James Gonzales. The plaintiffs contend, in effect, that once the trial judge found that an accident occurred due to James Gonzales’ negligence and that Progressive did not substantiate its claim that James Gonzales fraudulently conspired with the plaintiffs, a finding that the plaintiffs established their claim necessarily must follow. According to the plaintiffs, the trial judge could believe that all the members of the family, including James Gonzales, conspired to defraud the insurance company or that none of them conspired to defraud the insurance company, but to rule in favor of Progressive with regard to Rthe reconventional demand against the plaintiffs while dismissing Progressive’s claim against James *562 Gonzales constitutes irreconcilable judgments which must be overturned. Similarly, Progressive contends that the dismissal of its claim against their insured, James Gonzales, is manifestly erroneous. Specifically, with citation to American Cyanamid Company v. Electrical Industries, 630 F.2d 1123 (5th Cir.1980), Progressive asserts “if one of the Gonzales’s is found to have committed fraud, all of the plaintiffs and James must be found to have conspired in the fraudulent scheme.”
However, Progressive’s reliance on American Cyanamid, a federal case, for the proposition that under Louisiana law when one alleged conspirator is found to have committed fraud, all alleged conspirators must be found to have committed fraud, is misplaced. La. Civ. Code art. 2324(A) provides that “[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damaged caused by the act.” Nothing in American Cyan-amid, or other caselaw interpreting Article 2324(A), supports the all-or-nothing position proposed by the parties in this case. Rather, claims are determined separately and, although the evidence in this case may suggest that James Gonzales was also culpable in an attempt to defraud his insurer, we cannot find that the trial judge was clearly wrong in determining that the evidence does not support such a finding.
Finally, the plaintiffs argue that the trial court erred in rendering judgment on Progressive’s reconventional demand against them because, at the time Progressive filed its reconventional demand alleging fraud, the claim had 17prescribed. To determine whether a claim is prescribed, a court looks to the time when a plaintiff knew or should have known that a cause of action arose or existed and prescription statutes are strictly construed against prescription and in favor of the claim that is said to be extinguished. See Louisiana Health Service and Indemnity Company v. Tarver, 93-2449, pp. 11-12 (La.4/11/94), 635 So.2d 1090, 1098; Fontaine v. Roman Catholic Church of Archdiocese of New Orleans, 625 So.2d 548, 551 (La.App. 4 Cir.1993), writ denied, 93-2719, (La.1/28/94), 630 So.2d 787. In effect, the plaintiffs claim that Progressive should have immediately known that the plaintiffs claims were fraudulent on the day the lawsuit was filed and, because the reconventional demand was not filed within a year after the lawsuit was filed, Progressive’s claim is prescribed.
The boat incident in this case occurred on September 25, 2000, the lawsuit was filed on July 18, 2001, and, after a period of discovery, Progressive filed its amended answer and reconventional demand on November 19, 2003. Clearly, the payments made immediately to the plaintiffs for medical expenses indicate that, initially, the insurance company did not suspect fraud. Rather, the fact that the reconven-tional demand subsequent to the plaintiffs’ filing of the lawsuit and after a period of discovery suggests that it was only during the discovery process that Progressive began to question the legitimacy of the plaintiffs’ claims. In his Exception of Prescription, James Gonzales contends that Progressive filed a Motion for Protective Order on December 12, 2001[3], that indicated the insurance company had become suspicious as to the nature of the accident and claims. Although the plaintiffs con *563 tend that the insurance company always treated this as a ]sfraud case, there appears to be no record evidence that Progressive knew or should have known of the plaintiffs’ fraud on or before November 19, 2003, and, accordingly, the reeon-ventional demand (filed in November 2003) appears to be timely.
With regard to the substance of Progressive’s reconventional demand, an action for fraud consists of the following elements: (1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury. See Becnel v. Grodner, 2007-1041, p. 3 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894. Our review of the extensive medical testimony and records indicates that that the plaintiffs not only offered conflicting testimony to the court about the cause and nature of their alleged injuries and prior medical histories, but also misrepresented their medical histories to them treating physicians. Thus, in accordance with our standard of review, we find that the record supports a finding that Progressive substantiated their fraud claim against the plaintiffs.

Conclusion

For the above stated reasons, we find that Progressive timely filed its reconven-tional demand and that the record supports the trial judge’s dismissal of Progressive’s claim against James Gonzales and, therefore, deem the issues raised by James Gonzales in his Exception of Prescription and Exception Res Judicata moot. Accordingly, we affirm the judgment of the trial court and deny as moot the Exceptions of Prescription and Res Judicata.
JUDGMENT AFFIRMED; EXCEPTIONS DENIED AS MOOT.

. It is particularly likely that someone who was standing in the boat at the time of impact, as Ralph Gonzales claims he was, would have been ejected from the boat.

. Peggy Gonzales testified that she drove half the family to Lakeland and Ralph Gonzales drove there in his own truck; Kathy Gonzales testified that Ralph drove himself and everyone else went in Huey Gonzales’s truck. Ralph testified that he did not discuss hospital options at the boat launch and, thus, it was apparently coincidental that although Lake-land was not the hospital closest to the boat launch site, they all arrived at the same hospital.

. The record index indicates that a Motion for Protective Order was filed on December 13, 2001. However, However, the index also indicates that pages 1-858 or the record are missing "due to Hurricane Katrina” and, accordingly, the contents of the December 2001 motion is not in the record.